UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ACTION TAPES, INC., a Texas corporation d/b/a GREAT NOTIONS a/k/a AMAZING DESIGNS, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 3:05-CV-1239-G |
| VS. | ) ) | |
| JANET EBERT, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of defendant Janet Ebert ("Ebert") to vacate the default judgment entered against her and to dismiss this suit, or alternatively to transfer venue. For the reasons stated below, the motion is granted and this case is dismissed without prejudice.

### I. BACKGROUND

This case involves allegations of copyright infringement and unfair competition. According to the complaint, the plaintiff Action Tapes, Inc. ("Action

Tapes") is a Texas corporation that owns U.S. copyrights to thousands of embroidery designs. Original Complaint ¶¶ 2, 9. Ebert allegedly counterfeited and sold Action Tapes' designs through her online auction account with www.eBay.com and her own interactive website, www.jansturningpoint.com.[1] Plaintiff's Response to Defendant's Motion to Vacate Judgment ("Response") at 2. Action Tapes filed suit against Ebert on June 17, 2005. Docket Sheet. When Ebert failed to file an answer or responsive pleading, the clerk entered default against Ebert on September 28, 2005, and on October 3, 2005, this court entered default judgment in accordance with FED. R. CIV. P. 55(b). *Id*.

Ebert filed the instant motion on October 11, 2005, requesting that the court vacate the October 3rd default judgment because this judgment was "based on incomplete or incorrect facts of record." Docket Sheet; Motion to Vacate Judgement, and Dismiss and, Alternatively to Transfer Venue at 1 ("Plaintiff has stated that Defendant has made no effort to defend herself in this action, when, Plaintiff's attorney has been communicating with Defendants [sic] attorney on a somewhat regular basis in order to expedite the settlement of this action outside of this Court."). However, the bulk of Ebert's motion and reply is devoted to jurisdictional arguments.

---

[1] Action Tapes apparently discovered this infringement by finding items Ebert placed for online auctions at www.ebay.com. Affidavit of Thomas Casbon ¶ 2, *attached to* Plaintiff's Response to Defendant's Motion to Vacate Judgment *at* Tab 4. After initiating an investigation regarding these items, Action Tapes then utilized an alias, bid on the items, and purchased them after winning the auction. *Id*. ¶¶ 1, 3.

*See generally* Defendant's Brief in Support of Her Motion to Vacate Judgement, and Dismiss and, Alternatively to Transfer Venue ("Brief"); Response by Defendant, Janet Ebert, to Plaintiff, Action Tapes' Response to Defendant's Motion to Vacate Judgement, Dismiss and Alternatively to Transfer Venue and Brief in Support ("Reply").  Since "[a] less stringent examination is afforded *pro se* pleadings," *McDonald v. Asvestas*, No. 3:97-CV-0120-G, 1997 WL 74711 (N.D. Tex. Feb. 12, 1997) (Fish, J.) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), the court will construe Ebert's motion as a motion to vacate the default judgment against her pursuant to FED. R. CIV. P. 60(b)(4).

## II.  ANALYSIS

### A.  Vacating a Default Judgment:  Legal Standard

FED. R. CIV. P. 60(b)(4) provides that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . [if] the judgment is void . . . ."  "A judgment 'is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *New York Life Insurance Company v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996) (quoting *Williams v. New Orleans Public Service, Inc.*, 728 F.2d 730, 735 (5th Cir. 1984)).  In fact, "[t]he principle that a party may silently suffer a default judgment and later challenge personal jurisdiction is a 'foundational principle of federal jurisdictional law.'" *Jackson v. FIE Corporation*, 302

F.3d 515, 522-23 (5th Cir. 2002) (quoting *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 397 & n.9 (5th Cir. 2001)).  Thus, to determine whether the default judgment against Ebert is void, the court must decide whether it can exercise personal jurisdiction over Ebert in a manner consistent with due process.[2]

### B.  Personal Jurisdiction:  Legal Standard

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum.  *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984).  Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction.  *Id*.  Because the Texas long-arm statute confers jurisdiction to the limits

---

[2]  Ebert's motion also includes an argument that the default judgment should be vacated for improper venue.  *See* Brief at 5-7 (section entitled "Under 28 U.S.C. Section 1400(a), which governs actions for copyright infringement, venue is not proper in this district").  The court disagrees.  A defendant waives a challenge based on improper venue if she fails to appear, *Rogers v. Hartford Life and Accident Insurance Company*, 167 F.3d 933, 942 (5th Cir. 1999) ("[t]he Supreme Court has made clear that if a party defaults by failing to appear or file a timely responsive pleading, the party waives defects in venue"), so improper venue is not sufficient to render a default judgment void.

of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*, 20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq.* (Vernon 1997) (Texas long-arm statute).

### C.  Due Process Requirements

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a non-resident defendant:  (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on her part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

1.  *Minimum Contacts*

To establish minimum contacts with the forum, a nonresident defendant must do some act by which she "purposefully avails [her]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement.  *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84 (1978); *Hanson*, 357 U.S. at 253).  In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum.  *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant:  specific jurisdiction and general jurisdiction.  Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard.  *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and

citations omitted).  "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'"  *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987).  General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts.  *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate."  *Burger King*, 471 U.S. at 474 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'"  *Id.* at 475 (citations omitted).  A plaintiff must establish a substantial connection between the nonresident defendant and the forum state.  *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry -- "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

### a. Specific Jurisdiction Over Ebert

Action Tapes argues that there are two bases for asserting personal jurisdiction over Ebert: her transactions over www.eBay.com and the activities conducted on her personal website, www.jansturningpoint.com. Response at 10. Accordingly, the court will look to both bases to determine if it has personal jurisdiction over Ebert in this suit.

To exercise specific jurisdiction, the court must examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice. See *Holt Oil*, 801 F.2d at 777. The Fifth Circuit has held that when a party directs purposeful, tortious activity towards a particular forum, she should anticipate being haled into

court in that forum. See *D.J. Investments*, 754 F.2d at 547 (defendant corporate officer accused of fraud had sufficient contacts as he engaged in correspondence with plaintiff's forum, phoned plaintiff, and visited forum to negotiate); *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 333-34 (5th Cir. 1982) (single defamatory phone call sufficient to create personal jurisdiction), *cert. denied*, 460 U.S. 1023 (1983); *Union Carbide Corporation v. UGI Corporation*, 731 F.2d 1186, 1189-90 (5th Cir. 1984) (out of state acts giving rise to tortious injury in forum state enough to warrant personal jurisdiction).

Courts faced with the question of personal jurisdiction involving eBay transactions have consistently held that the typical online auction process is insufficient to confer specific jurisdiction over the defendant. See, *e.g.*, *Action Tapes v. Weaver*, No. 3:05-CV-1693-H, 2005 WL 3199706, at *3 (N.D. Tex. Nov. 23, 2005) (Sanders, J.); *United Cutlery Corporation v. NFZ, Inc.*, No. CCB-03-1723, 2003 WL 22851946, at *2-5 (D. Md. Dec. 1, 2003); *Machulsky v. Hall*, 210 F. Supp. 2d 531, 544-45 (D.N.J. 2002); *Winfield Collection, Ltd. v. McCauley*, 105 F. Supp. 2d 746, 749 (E.D. Mich. 2000); cf. *McGuire v. Lavoie*, No. 3:03-CV-0161-BH, 2003 WL 23174753, at *5 (N.D. Tex. Aug. 19, 2003) (finding personal jurisdiction because the eBay seller ended the auction prematurely and entered into a traditional sales relationship through a series of transactions with a known buyer).

*Action Tapes v. Weaver* involved a situation very similar to the case *sub judice*. In neither that case nor this was it argued that the traditional eBay auction procedure was altered or circumvented in any manner. Agreeing with the decision in *Action Tapes v. Weaver*, the court concludes that Ebert's conduct of an auction on eBay is insufficient to confer specific jurisdiction. See *Action Tapes v. Weaver*, 2005 WL 3199706, at *3 (holding "that, absent other factors, an individual is not made subject to personal jurisdiction in the Northern District of Texas for alleged copyright infringement by virtue of an eBay auction transaction conducted with a Dallas resident").

Turning to the question of Ebert's personal website, this Circuit has adopted the approach of *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), in determining whether the defendant's operation of an Internet website provides the requisite minimum contacts for personal jurisdiction. See *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002); *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999). The *Zippo* decision established a sliding-scale test to evaluate the "nature and quality of commercial activity that an entity conducts over the Internet." *Zippo*, 952 F. Supp. at 1124. District courts in Texas have employed the *Zippo* analysis in specific jurisdiction cases. See *Mothers Against Drunk Driving v. DAMMADD, Inc.*, No. 3:02-CV-1712-G, 2003 WL 292162, at *5 (N.D. Tex. Feb. 7, 2003) (Fish, Chief J.); *Carrot Bunch Co., Inc. v. Computer Friends,*

*Inc.*, 218 F. Supp. 2d 820, 824-26 (N.D. Tex. 2002); *American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.*, 106 F. Supp. 2d 895, 900 n.10 (N.D. Tex. 2000); *People Solutions, Inc. v. People Solutions, Inc.*, 2000 WL 1030619 at *3 (N.D. Tex. July 25, 2000).

The *Zippo* sliding-scale analysis categorizes Internet use into a three point spectrum. At one end of the spectrum, a defendant "merely establishes a passive website that does nothing more than advertise on the Internet." *Mink*, 190 F.3d at 336. Personal jurisdiction based on a "passive website" is inappropriate. See *Mink*, 190 F.3d at 336; *Carrot Bunch*, 218 F. Supp. 2d at 825. At the other end of the spectrum, "a defendant clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet. . . .'" *Mink*, 190 F.3d at 336 (quoting *Zippo*, 952 F. Supp. at 1124). In this situation, personal jurisdiction over the nonresident defendant is proper. See *Mink*, 190 F.3d at 336; *Carrot Bunch*, 218 F. Supp. 2d at 825. Between these two extremes are cases where a defendant's website allows a visitor to exchange information with a host computer. *Mink*, 190 F.3d at 336. "In this middle ground, 'the exercise of jurisdiction is determined by the *level of interactivity and commercial nature* of the exchange of information that occurs on the [w]ebsite.'" *Mink*, 190 F.3d at 336 (quoting *Zippo*, 952 F. Supp. at 1124) (emphasis added); *American Eyewear*, 106 F. Supp. 2d at 901. The critical inquiry, however, as

with any personal jurisdiction case, is whether the contacts suggest that the nonresident defendant purposefully directed her activities toward the forum state or purposefully availed herself of the privilege of conducting activities within the forum state.  See *Origin Instruments Corporation v. Adaptive Computer Systems, Inc.*, 1999 WL 76794 at *2 (N.D. Tex. 1999); see also *Hanson*, 357 U.S. at 253; *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 298-99 (1980).

Applying these principles, the court concludes that Ebert's website falls within the middle range of the *Zippo* spectrum.  Ebert's website clearly allows a visitor to interact and exchange information with a host computer by selecting and ordering embroidery designs for purchase and shipment.  *See* Affidavit of Brent Gardner ¶ 2, *attached to* Response *at* Tab 3.  Action Tapes alleges that Ebert has sold its copyrighted designs on this website, Response at 8, but no specific evidence has been presented that Ebert sold these designs to Action Tapes or any other Texas resident.  *See generally* Response and attached exhibits at Tab 1 (recording transactions through eBay, not Ebert's personal website).[3]  Rather than creating an alias and purchasing

---

[3]  One affidavit filed by the plaintiff in this case could be construed as indicating that a purchase was made by a Texas resident from Ebert's personal website.  *See* Affidavit of Thomas Casbon ¶ 8 ("that Defendant sold to the Plaintiff through her interactive auction site at www.ebay.com on the internet and the interactive store front website at www.jansturningpoint.com").  However, given that the majority of the affidavit concerns sales taking place through eBay and that Ebert vigorously denies making personal website sales, Reply at 16 ("no sales were transacted thru website"), the court is unsure whether Action Tapes is alleging that it purchased designs from Ebert's website, or merely combining the eBay purchases with
(continued...)

the designs as it did via eBay, Action Tapes has produced no evidence that it engaged in a similar transaction with www.jansturningpoint.com.  Ebert does not appear to have any property in Texas, nor has she or any of her agents ever traveled to Texas in order to promote her modest company.  *See* Affidavit of Janet Ebert, filed October 11, 2005, at 1-2; Reply at 13 ("Defendant has not advertised in Texas, and does not advertise in Texas, nor does Defendant have any agents who represent her in Texas").  Consequently, the totality of the contacts alleged between Ebert and Texas do not demonstrate that Ebert has purposefully directed her activities toward Texas, that she has purposefully availed herself of the benefits and protections of Texas law, or that she could reasonably foresee being haled into court in Texas.  See, *e.g.*, *Shamsuddin v. Vitamin Research Products*, 346 F. Supp. 2d 804, 816-17 (D. Md. 2004) (finding that court had no personal jurisdiction over defendant that operated interactive website on which visitors could order products online because "the paucity of sales to Maryland residents [and] lack of advertising targeted to Maryland" indicated that defendant did "not purposefully avail itself of the privilege of conducting activities in Maryland").

---

[3](...continued)
the fact that Ebert maintained a personal website.  *See also* Original Complaint (discussing sales through eBay, but neglecting to mention any purchases through or conduct relating to Ebert's personal website).  If, in fact, such a purchase occurred, it does not significantly alter the *Zippo* analysis.  The court finds that, even with this possible purchase, the attenuated contacts with Texas indicate personal jurisdiction over Ebert is lacking.

Accordingly, Ebert's website, www.jansturningpoint.com, is not sufficient to confer personal jurisdiction.

### b.  General Jurisdiction Over Ebert

Because the claims against Ebert in this case relate to her contact with Texas, and because Action Tapes has not alleged that Ebert has continuous and systematic contacts with Texas, the court will not address the question of general jurisdiction.[4]

### 2.  *Fair Play and Substantial Justice*

The second prong of the due process analysis limits the court's power to exercise personal jurisdiction over a nonresident if the exercise of jurisdiction under the circumstances would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Since Ebert does not have sufficient minimum contacts such that she can be subject to jurisdiction in this forum, the court "need not determine whether exercise of personal jurisdiction here would comport with notions of fair play and substantial justice." *Ham v. La Cienega Music Company*, 4 F.3d 413, 416 n.15 (5th Cir. 1993).[5]

---

[4]  The court notes that, if Action Tapes had made such an argument, the court would find general jurisdiction lacking.  See *National Union Fire Insurance Company of Pittsburgh, PA v. IF P&C Insurance, Ltd.*, No. 3:04-CV-2185-G, 2005 WL 1639282, at *6 (N.D. Tex. July 13, 2005) (Fish, Chief J.) ("[c]ases involving general jurisdiction suggest that these contacts must be very substantial").

[5]  Both Ebert and Action Tapes advanced an argument concerning whether
(continued...)

III.  CONCLUSION

In deciding whether a nonresident should be required to defend herself in a suit in Texas arising out of contacts between her and a Texas resident, "'each case must be decided on its own facts.'" *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983) (citation omitted), *cert. denied*, 466 U.S. 962 (1984).  In this case, the totality of the purported contacts between Ebert and Texas do not demonstrate that Ebert purposefully availed herself of the benefits and protections of Texas law or that she could reasonably foresee being haled into court here.  The exercise of jurisdiction over Ebert would thus be inconsistent with the requirements of due process.  It necessarily follows that the default judgment previously entered against Ebert is void for lack of personal jurisdiction over her.  Accordingly, Ebert's motion to vacate that default judgment is **GRANTED**, the default judgment entered against Ebert on October 3, 2005 is **VACATED**, and Action Tapes' claims against Ebert are **DISMISSED** without prejudice.

---

[5](...continued)
Ebert has shown "good cause" to vacate the default judgment entered against her. However, because the court is construing Ebert's motion as a motion to vacate a void default judgment -- and finding this motion should be granted -- the court need not address whether the "good cause" standard was met.

**SO ORDERED**.

February 9, 2006.

_____
A. JOE FISH
CHIEF JUDGE